FILED

2016 Aug-16  AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ALFONSO TOLBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    CASE NO.  2:15-CV-0516-SLB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Alfonso Tolbert[1] brings this action pursuant to 42 U.S.C. § 405(g),[2] seeking review of the Commissioner of Social Security's final decision denying his application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"].  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Mr. Tolbert initially filed an application for DIB on June 7, 2012  and an application for SSI on June 8, 2012.  (Doc. 7-3 at R.10.)[3]  His applications were denied initially.  (*Id.*;

---

[1]The court notes that on some documents in the record Mr. Tolbert is referred to as "Alfonsia."  (*See*, *e.g.*, doc. 7-7 at R.169; doc. 7-8 at R.223.)

[2]The judicial review provision for a disability insurance benefits claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see*  42 U.S.C. § 1383(c)(3).

[3]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

doc. 7-5 at R.69, R.74.)  Thereafter, he requested a hearing before an Administrative Law Judge ["ALJ"], which was held on July 17, 2013, in Birmingham, Alabama.  (Doc. 7-5 at R.83; doc. 7-3 at R.25.)  After the hearing, the ALJ found that Mr. Tolbert was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Doc. 7-3 at R.19.)  In light of this finding, the ALJ denied Mr. Tolbert's claims for DIB and SSI on November 7, 2013.  (*Id.*)

Mr. Tolbert then requested the Appeals Council to review the ALJ's decision.  (*Id.* at R.6.)  On January 30, 2015, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision.  Therefore, [it] denied [Mr. Tolbert's] request for review," and the ALJ's decision became the final decision of the Commissioner. (*Id.* at R.1.)

Following denial of review by the Appeals Council, Mr. Tolbert filed the present appeal in this court.  (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The court gives deference to factual findings and reviews questions of law de novo.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew,

reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted)

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI.  *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB and SSI benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[4] 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). "Under the first step, the claimant has the

---

[4]The regulations state:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

4

burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[5]

The ALJ found that Mr. Tolbert had not engaged in substantial gainful activity since May 9, 2012, the alleged onset date.  (Doc. 7-3 at R.13.)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3);  42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience."  20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).  "An impairment can be considered as not severe only if it is a slight

---

[5]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; 20 C.F.R. § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Tolbert had the severe impairments of chest pain, leg pain, and foot pain. (Doc. 7-3 at R.13.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

6

The ALJ found that Mr. Tolbert did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Doc. 7-3 at R.13.)

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); 20 C.F. R. § 416.920(a)(4)(iv), (f).  At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it."  20 C.F.R. § 404.1560(b)(1); 20 C.F.R. § 416.960(b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 404.1560(e); 20 C.F.R. § 416.920(e). The claimant bears the burden of establishing that the impairment prevents him from performing past work.  *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Tolbert had the  RFC "to perform medium work . . . which allows occasional climbing and no work with hazardous machinery."[6]  (Doc. 7-3 at R.14.)

---

[6]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c); 20 C.F.R. §416.967(c).  Although the regulations do not contain any reference to the claimant's ability to stand or walk, the Commissioner has stated:

> 3. *Medium work*.  The regulations define medium work as lifting no more than

The ALJ also found that Mr. Tolbert could not perform his past relevant work because such work was performed at medium to heavy exertional levels in excess of the restrictions assessed in his RFC.  (*Id*. at R.17.)

As for Mr. Tolbert's other vocational factors, the ALJ found Mr. Tolbert was 59 years old, an individual of advanced age, on the alleged onset date.  (*Id*.)  He had a high school education plus one year of college course work and was able to communicate in English.

---

50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping[.]  (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.)  Flexibility of the knees as well as the torso is important for this activity.  (Crouching is bending both the legs and spine in order to bend the body downward and forward.)  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs).  In most medium jobs, being on one's feet for most of the workday is critical.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Titles II & XVI:  Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10 at *6.

(*Id.*)  Also, he found that whether Mr. Tolbert had any transferable job skills was not material to his decision.  (*Id.*)

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 404.1520(c)(1); 20 C.F.R. § 416.920(c)(1).   The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.   Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); 20 C.F. R. § 416.960(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).   If, however, the Commissioner finds that the claimant can perform other work, the claimant has the burden to prove he in not capable of performing such other work.[7]

---

[7]The Eleventh Circuit has noted:

In practice, the burden temporarily shifts at step five to the Commissioner.  *See Jones* [*v. Apfel*], 190 F.3d [1224,] 1228 [(11th Cir. 1999)].  The Commissioner

Because the ALJ found Mr. Tolbert could not perform a full range of medium work, he consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that Mr. Tolbert, considering his RFC and his vocational factors, could perform. The VE testified that an individual with Mr. Tolbert's limitations and vocational factors could perform the jobs of night cleaner, hand packer, and laborer, which are jobs that exist in significant numbers in the national economy.  (Doc. 7-3 at R.18, R.47-48.)  Based on this testimony, the ALJ found Mr. Tolbert could perform other work and, therefore, was not under a disability from May 9, 2012, through November 7, 2013.  (*Id*. at R.19.)

## B.  TOLBERT'S ISSUE ON APPEAL

Mr. Tolbert raises a single issue on appeal: whether the ALJ improperly evaluated the credibility of his testimony under the Eleventh Circuit Pain Standard.  He contends that the ALJ erred in finding his pain was not disabling based on the medical evidence and his limited daily activities.

---

must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. *See id*.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  *See id.*  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.  *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)(quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)( "The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act")).

*Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

In this Circuit –

When a claimant attempts to establish a disability through [his] own testimony concerning pain or other subjective symptoms, [the court applies] a three-part test, which requires (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is of a severity that can reasonably be expected to cause the alleged pain. *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002)(per curiam). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992)(per curiam). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id.*

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce [his] symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. §404.1529(c)(1). In doing so, the ALJ must consider all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors. *Id.* § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve [his] pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to [his] pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ must then examine the claimant's statements regarding [his] symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

*Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx 783, 786-87 (11th Cir. 2015).

Based on its review of the record before the Commissioner, this court finds that the ALJ properly applied the pain standard and his determination regarding Mr. Tolbert's credibility is supported by substantial evidence. In his decision, the ALJ found, "While the

claimant may reasonably be expected to experience some pain and limitations, the preponderance of credible evidence fails to corroborate the assertions of a complete inability to perform all substantial gainful activity, particularly those activities which would not require climbing.  Any contention to the contrary is not fully credible."  (Doc. 7-3 at R.17.) Mr. Tolbert contends that this finding is not supported by substantial evidence because the ALJ "failed to properly consider the medical evidence which . . . supports the testimony of significant limitations due to leg and chest pain," and he "accepted the Plaintiff's reports of [his daily activities] but ignored the limits the Plaintiff described as to those activities." (Doc. 9 at 5, 8.)

## A.  MEDICAL EVIDENCE

In his Decision, the ALJ discussed the evidence of Mr. Tolbert's limited medical treatment:

> The medical evidence illustrates that on April 24, 2011, the claimant presented to Cooper Green Hospital with complaints of chest pain.  [(Doc. 7-8 at R.192.)]  Diagnostic testing included a normal myocardial perfusion imaging and cardiovascular stress test with no chest pain or EKG changes.  [(*Id*. at R.196, R.198, R.216, R.218.)]  Chest x-rays indicated a normal heart center with clear lungs.  [(*Id*. at R.219.)]  The claimant then underwent an upper and lower endoscopy with results indicating mild gastritis.  [(*Id*. at R.200-01]  The claimant was placed on anti-hypertensive medication, instructed as to diet, and advised to quit smoking.[8]  [(*Id*. at R.198.)]

---

[8]The note in the medical record actually states, "The patient was counseled ***extensively*** on his need for tobacco cessation given his other comorbid conditions."  (Doc. 7-8 at R.198 [emphasis added].)  Other record evidence shows that Mr. Tolbert was told to stop smoking on at least one other occasion.  (*See id*. at R.241.)

On June 30, 2012, Ashley Holdridge, DO, examined the claimant at the request of the state agency. [(*See id*. at R.223.)] Dr. Holdridge interviewed the claimant and noted his report of a 20-year history of leg pain since a broken left fibula and tibula. [(*Id*.)] The claimant reported a burning sensation in the right knee and leg for the past three to four years. [(*Id*.)] He reported the pain occurred mostly with walking and is relieved by rest. [(*Id*.)] Upon examination, Dr. Holdridge observed the claimant to get on and off the examination table without assistance. [(*Id*. at R.224.)] The claimant was 5'9" in height with a weight of 167 pounds and blood pressure of 166/124. [(*Id*.)] The claimant had reduced range of motion in his knees, but normal range of motion in the back and upper extremities. [(*Id*. at R.225-26.)] The claimant had 5/5 motor strength, 5/5 grip strength, good muscle bulk, and good tone. [(*Id*. at R.226.)] He had 2+ deep tendon reflexes throughout. [(*Id*.)] The diagnostic impression was osteoarthritis[9] and possible peripheral vascular disease given the calf pain with walking.[10] [(*Id*.)]

On December 14, 2012, the claimant presented to the Cooper Green emergency room with complaint of moderate chest pain of two hours duration. [(*Id*. at R.233.)] The claimant reported the pain increased with walking. [(*Id*.)] Chest x-rays showed no significant abnormality.[11] [(*Id*. at R.242.)] He had regular heart rate and rhythm with no murmurs, gallops, or rubs.[12] [(*Id*. at R.241.)] He had no peripheral edema, normal peripheral pulses, and normal

---

[9]Dr. Holdridge noted, "It appears that the claimant's knee pain could be attributed to arthritis. He did have this accident, however, it involved his tibia and fibula and not really his knee. Therefore, it is unclear why he has left knee pain other than possibly osteoarthritis. The claimant has full range of motion. No crepitus or effusions were noted. The claimant is able to ambulate without assistance." (Doc. 7-8 at R.226.)

[10]Dr. Holdridge noted, "The claimant has no records to review to see if this has been evaluated, . . . but his symptoms sound consistent with peripheral vascular disease. Given that he is a smoker, this is a likely diagnosis." (*Id*.)

[11]The x-rays showed, "The lung fields are clear. The heart, mediastinum and bony thorax are normal." (*Id*. at R.242.)

[12]This finding appears to be from an examination conducted on November 13, 2012. (*See id*. at R.241.) However, the examination on December 14, 2012, was similar. The examination was negative for palpitations, shortness of breath, and leg edema; his "heart sound[ed] normal." (*Id*. at R.233-34.)

breath sounds.[13]  [(*Id*.)]  The claimant was discharged with a referral to the surgery clinic for hemorrhoids.  [(*Id*. at R.236.)]  On April 17, 2013, the claimant presented with atypical angina chest pain with exertion and claudication with walking down the length of the hall.  An electrocardiogram was normal.  [(*Id*. at R.247.)]  Chart notes indicated a referral to cardiology.  [(*Id*.)]

On May 22, 2013, the claimant went to the cardiology clinic where he received prescriptions for Trental for peripheral artery disease; Norvasc for blood pressure; and enteric coated aspirin.[14]  [(*See id*. at R.255-56.)]  The claimant had an allergic reaction to Lisinopril and received additional written instructions not to take Lisinopril or any other ACE-Inhibitor medications ever again.  [(*Id*. at R.257 *see id*. ast 249.)]

(Doc. 7-3 at 15-16 [footnotes added; original citations omitted].)

The medical evidence does not support Mr. Tolbert's claims of disabling chest and leg/foot pain.  Although he has several presentations complaining of chest pain and testified that his chest pain was exacerbated by any activity, including showering, he did not complain of chest pain during his consultative examination with Dr. Holdridge.  He did, however, complain of neck pain and knee pain, which are not mentioned in any other medical records.  Certainly, Mr. Tolbert's failure to mention his chest pain during the consultative examination is inconsistent with his testimony that most exertions cause chest pain.  Moreover, other than

---

[13]See, *supra*, note 12.

[14]The record contains no treatment notes from the visit to the cardiology clinic.  However, this visit may be inferred by records of prescriptions from around this time which are in the record.  (*See id*. at R.254-56.)  Mr. Tolbert testified that he was told he needed a stent, but nothing in the medical records supports this statement.  The need for a stent is not supported by medical tests that are in the record.

evidence of prescriptions, the record contains no evidence of any other treatment for PAD or leg/foot pain.

The record is largely devoid of any objective evidence of a medical condition of sufficient severity to cause disabling pain and it contains only sporadic treatment notes of conservative treatment.  The lack of abnormal test results or findings and only sporadic, conservative treatment are inconsistent with Mr. Tolbert's testimony that he suffers disabling pain that prevents him from walking short distances, standing for longer than an hour, or otherwise performing work activity at a medium level of exertion.

The court finds that the ALJ's determination that Mr. Tolbert's testimony was not entirely credible as it was inconsistent with the medical record is supported by substantial evidence and will not be disturbed.

## B.  DAILY ACTIVITIES

After discussing Mr. Tolbert's medical evidence, the ALJ stated:

> The undersigned notes the claimant's report of driving his daughter, his friend, and his grandchild daily to their respective jobs or school and then picking them up at the end of the day.  The claimant testified to no problems with taking care of personal hygiene or helping his friend around the house.  . . . While the claimant may reasonably be expected to experience some pain and limitations, the preponderance of credible evidence fails to corroborate the assertions of a complete inability to perform all substantial gainful activity, particularly those activities which would not require climbing.  Any contention to the contrary is not fully credible.

(Doc. 7-3 at R.16.)   Mr. Tolbert contends, "A review of the record demonstrates the Plaintiff's activities are not as substantial as the ALJ claimed."  (Doc. 9 at 8.)   He objects to the ALJ not mentioning his statements that "[1] he takes his daughter to work and may try

15

to wash some dishes[, (doc. 7-3 at R.32);] [2] . . . he takes his grandchild to school[,] (*id*. at 40),] [h]owever, . . . when he comes home, he sits down and 'rests up' until it is time to pick them up[, (*id*.);] [3] he lives with a friend who helps with the cleaning and cooking and washes clothes occasionally[, (doc. 7-8 at R.224 [emphasis added])."  (Doc. 9 at 9.)

The court finds the ALJ's description of Mr. Tolbert's daily activities – "driving his daughter, his friend, and his grandchild daily to their respective jobs or school and then picking them up at the end of the day" and "taking care of personal hygiene or helping his friend around the house" – accurately described the substance of Mr. Tolbert's daily activities.[15]  (Doc. 7-3 at R.16.)  The ALJ did not state specifically that Mr. Tolbert had testified he rested during the day or that he "help[ed] his friend out around the house" only on occasion, but the ALJ did not imply activities to the contrary.  Moreover, driving every day to three different locations, taking care of his personal hygiene, and helping out around the house to any degree is inconsistent with Mr. Tolbert's testimony that any significant exertion causes him pain to the extent he must sit down and rest.  (*See* doc. 7-3 at 29

---

[15]The ALJ's statement closely follows Mr. Tolbert's description of his daily activities in his Function Report – Adult:

Describe what you do from the time you wake up until going to bed.

Take my friend['s] daughter to work, take daughter's child to school, take friend to work, [try] to do housework.  Pick up friend's daughter from work, pick up friend from work, watch T.V., go to bed.

(Doc. 7-7 at R.162.)  He also stated that he was able to do "laundry, household repair, [and] vacuum," which he performed "once or twice every two or three weeks."  (*Id*. at R.164.)

["[W]hen I walk I have leg pains and it goes over to my foot then my foot hurts[;] I have foot pain.  Most anything I do[,] including showering, I have chest pain."], 32-33 ["Q  And in regard to the chest pain can you describe how often you experience chest pains?  A  Just anything I do, any kind of activity."].)

In a similar case in which the claimant raised the issue of her limited daily activities, this court held:

> Plaintiff argues, however, that "'participation in everyday activities of short duration, such as housework or fishing' does not disqualify a claimant from disability and does not establish that a claimant can perform sedentary work."  (Doc. 8 at 9)(quoting *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997)).  This argument might be more persuasive if plaintiff's daily activities were the only reason that the ALJ discredited her testimony, or, as in *Lewis,* if the ALJ had been up against two treating physicians who opined that the plaintiff was disabled.  *Lewis,* 125 F.3d at 1441.  But the language omitted from plaintiff's excerpt shows that *Lewis* does not help her much: "Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability *or is inconsistent with the limitations recommended by Lewis's treating physicians." Id.* (emphasis added).  In this case, plaintiff has no limitations recommended by her treating physicians, nor does the ALJ's decision rely heavily on plaintiff's daily activities.  The ALJ found that she goes shopping, drives up to an hour and a half, and goes to church twice a week.  (Doc. 6-3 at 18); (*see* doc. 6-7 at 44-45; doc. 6-3 at 36).  These activities simply made up one piece of the substantial evidence upon which the ALJ relied to discredit plaintiff's own characterization of the effects of her symptoms.

*Hollis v. Colvin*, No. 7:12-CV-2833-SLB, 2014 WL 721947, at *6 (N.D. Ala. Feb. 21, 2014)(footnote omitted; emphasis in original).

While the ALJ recognized that Mr. Tolbert experiences some recurrent leg and chest pain, he found "no indiction of any ongoing limitations or restrictions that would preclude the claimant from all work."  (Doc. 7-3 at R.16).  This finding was ***not*** based solely on Mr.

Tolbert's limited daily activities.  However, the court finds that his daily activities, as found by the ALJ and supported by substantial evidence,  are inconsistent with his testimony that the intensity and persistence of his pain prohibits virtually all exertional activity.  The court finds no error in the ALJ's discussion of Mr. Tolbert's daily activities as they reflect upon his credibility.

Based on the foregoing, the decision of the ALJ, as adopted by the Commissioner, denying Mr. Tolbert's claim for a period of disability, DIB, and SSI is due to be affirmed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.  An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 16th day of August, 2016.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE